IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

ALEXAVIER NEGRON,

Defendant.

CRIMINAL ACTION FILE

NO. 1:23-CR-125-MHC-RGV-4

## ORDER

Defendant Alexavier Negron ("Negron") has been charged in a multi-count superseding indictment with other co-Defendants on one count of conspiring to possess with the intent to distribute at least 500 grams of methamphetamine and 500 grams of cocaine, in violation of 21 U.S.C. § 846 (Count One); one count of possession with the intent to distribute at least 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (Count Nine); and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Nineteen). First Superseding Criminal Indictment [Doc. 528]. This action comes before the Court on the Final Report and Recommendation ("R&R") of United States Magistrate Judge Russell G. Vineyard [Doc. 741] recommending the denial of Negron's Motion to Suppress

Case 1:23-cr-00125-MHC-RGV   Document 793   Filed 05/02/25   Page 2 of 19

Evidence From Search of Residence ("Mot. to Suppress") [Doc. 398] and Negron's

Perfected Motion to Suppress to Address Standing for Doc. 381[1] [Doc. 417].

The Order for Service of the R&R [Doc. 742] provided notice that, in

accordance with 28 U.S.C. § 636(b)(1), the parties were authorized to file objections

within fourteen (14) days of the receipt of that Order.  After receiving an extension

of time to file objections [Doc. 751], Negron filed his objections to the R&R

("Def.'s Objs.") [Doc. 765], to which the Government has filed a response

("Gov't's Resp.") [Doc. 777].

## I.   LEGAL STANDARD

In reviewing a Magistrate Judge's R&R, the district court "shall make a de

novo determination of those portions of the report or specified proposed findings

or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "Parties

filing objections to a magistrate's report and recommendation must specifically

identify those findings objected to.  Frivolous, conclusive, or general objections

need not be considered by the district court." United States v. Schultz, 565 F.3d

---

[1] The Magistrate Judge found that Negron submitted sufficient evidence to establish a legitimate expectation of privacy with respect to the residence searched and proceeded to the merits of Negron's motion to suppress. R&R at 6-17. Because Negron's "perfected" motion to suppress was intended only to argue standing to file the prior motion to suppress, it is **DENIED AS MOOT.**

1353, 1361 (11th Cir. 2009) (quoting Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)).  If there are no specific objections to factual findings made by the Magistrate Judge, there is no requirement that those findings be reviewed *de novo*.  Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993) (citations omitted).  Moreover, "a party does not state a valid objection to an R&R by merely incorporating by reference previous filings." Hammonds v. Jackson, No. 13-CV-711-MHS, 2015 WL 12866453, at *6 n.2 (N.D. Ga. May 18, 2015); see also Morrison v. Parker, 90 F. Supp. 2d 876, 878 (W.D. Mich. 2000) ("Plaintiffs' general, nonspecific objections, purporting to incorporate by reference their earlier brief, are tantamount to no objection at all and do not warrant further review.") (citations omitted).

Absent objection, the district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), and may accept the recommendation if it is not clearly erroneous or contrary to the law. FED. R. CRIM. P. 59(a).  In accordance with 28 U.S.C. § 636(b)(1) and Rule 59 of the Federal Rules of Criminal Procedure, the Court has conducted a *de novo* review of those portions of the R&R to which Ortiz objects and has reviewed the remainder of the R&R for plain error. See United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

## II.   SUMMARY OF PROBABLE CAUSE STATEMENT IN THE SEARCH WARRANT AFFIDAVIT

The facts contained in this summary are taken from the affidavit of Drug Enforcement Administration ("DEA") Special Agent Bryan Tice ("Agent Tice") submitted in support of the application for the residential search warrant that is the subject of Negron's motion to suppress. Aff. in Supp. of Search Warrant ("SW Aff.") [Doc. 398-1]. In June 2019, the DEA initiated an investigation into the Paper Gang Family ("PGF"), whose members were distributing kilogram quantities of methamphetamine, cocaine, and other controlled substances in the Atlanta metropolitan area. Id. ¶ 11. As a part of the investigation, agents obtained federal wiretaps to monitor communications between suspected PGF members, conducted "hundreds of hours of physical/electronic surveillance," utilized "multiple human sources, including cooperating defendants and confidential sources," and installed a pole camera that could observe and record the street and driveway areas adjacent to the residences located at Stanford Drive in Ellenwood, Georgia, which was an area that members of the PGF referred to as "The Neighborhood" and in which drug transactions were conducted. Id. ¶¶ 12-14. Since the inception of the investigation, agents also conducted traffic stops leading to the arrests of ten individuals on state drug charges and seized kilogram quantities of cocaine, methamphetamine, and marijuana. Id. ¶ 15.

4

With respect to Negron's activities, Agent Tice averred as follows:

- Agents identified a PGF member ("K.P.") as an operator of a drug stash house at 6005 Randy Lane, Ellenwood, Georgia ("Target Location 4"). Id. ¶¶ 2, 19, 71.

- Agents identified 2679 Dayview Lane, Atlanta, Georgia ("Target Location 7") as Negron's residence. Id. ¶¶ 2, 89, 95.

- The DEA investigation identified Negron as a "high ranking member of the PGF and a domestic source of supply" of narcotics based, in part, on (a) an intercepted communication on July 20, 2022, between Negron and co-Defendant Rodrigus Williams a/k/a Dreek ("Dreek"), in which Negron asked Dreek to meet Negron's girlfriend to pick up money, (b) surveillance of Dreek and Negron's girlfriend where the girlfriend gave Dreek a black box later seized by Georgia State Patrol troopers after a traffic stop in which $151,000 and a 9mm firearm were recovered, (c) an intercepted communication in which Negron and Dreek discussed the traffic stop, and (d) on July 25, 2022, Negron activated two new telephones and disconnected the phone on which conversations had been monitored. Id. ¶¶ 89-92.

5

- Based on a surveillance camera installed by DEA agents in the area of Target Location 4, agents observed vehicles arriving for brief periods of time, enter the residence, and leave with bulky bags presumed to contain narcotics. Id. ¶ 71.

- Agents identified an individual ("V.V.") as a cocaine source of supply, a partner of Negron, and a close associate of other leaders of the PGF. Id. ¶ 20.

- On March 31, 2023, agents observed Negron arrive in a white GMC truck at Target Location 4, went to the back of the truck, retrieve a large weighted brown cardboard box, and took it to the side of the residence. Within an hour, other PGF members arrived at the location and picked up drugs that agents believed were delivered by Negron. Id. ¶ 72.

- On April 7, 2023, agents intercepted a telephone call between V.V. and Negron during which Negron said he was waiting on six different customers to each pay for a gram of cocaine. Negron also asked V.V. "if they were still on schedule to get resupplied drugs on the next day," which V.V. confirmed. Id. ¶ 93.

6

- On April 9, 2023, agents intercepted a call between K.P. and S.P., another individual involved with the PGF, in which they discussed that Dreek had borrowed over $20,000 the day prior from Negron to purchase a kilogram and a half of cocaine. Id. ¶¶ 17(g), 73.

- The pole camera footage from the previous day from Target Location 4 showed that (1) Dreek arrived at 6:18 PM; (2) Negron arrived at 8:00 PM; (3) Negron entered the residence; and (4) a black Chevrolet Tahoe previously observed driven by S.P. was parked at the same location, which supported the information discussed between K.P. and S.P. in the following day's call. Id. ¶ 74.

- On April 10, 2023, agents intercepted a telephone call between V.V. and Negron at or after the time Negron was at Target Location 7 in which Negron said he had money available as well as money owed to him from three persons for drugs Negron supplied. Id. ¶ 94.

Negron originally was indicted on April 19, 2023, with other alleged members of the PGF, for conspiracy to possess with the intent to distribute at least 500 grams of methamphetamine and cocaine. Criminal Indictment [Doc. 1]. Five days later, Agent Tice applied for and was granted a search warrant for Target Location 7, the property believed to be Negron's residence [Doc. 398-1]. With

7

respect to supporting facts that property used in drug trafficking would be found at

Target Location 7, where Negron resided, the affidavit stated as follows:

> 96.    In January 2023, agents obtained federal search warrants for iCloud accounts associated to NEGRON's 2404 Phone and NEGRON's 2570 Phone. In the iCloud account is a video of NEGRON wearing a gold necklace with a diamond encrusted PGF charm. Another video shows numerous pieces of what appears to be expensive diamond encrusted necklaces and watches, that I believe NEGRON bought using drug proceeds.  I believe that these pieces of jewelry which evidence PGF membership and are evidence of money laundering will be found at **Target Location 7.**

> 97.    In addition, I believe that NEGRON keeps and stores drug proceeds at his residence based on above recent calls about having money to pay for three to four kilograms of drugs.  Further, agents observed a video on NEGRON's iCloud Accounts showing NEGRON driving in his Durango Hellcat with approximately $60,000 in USC (estimated based on the way that it is packaged) in the center console area.  This vehicle is frequently observed in the driveway or garage of **Target Location 7.**  Because I know that people rarely keep large sums of money in their vehicles for fear it will be stolen, I believe that NEGRON likely kept the money at his residence.

> 98.    Finally, as discussed above, NEGRON has used multiple telephones to conduct his drug trafficking over the course of this investigation, including TT#5, NEGRON's 2570 Phone and NEGRON's 2404 Phone. I believe that NEGRON's 2570 Phone, NEGRON's 2404 Phone, and TT#5 will be located at **Target Location 7.**

SW Aff. ¶¶ 96-98.

## III.   DISCUSSION

### A.   The Report and Recommendation

In his Motion to Suppress, Negron challenged the affidavit submitted in support of the search warrant for his residence on the grounds that it contained material misstatements and omissions in violation of Franks v. Delaware, 438 U.S. 154 (1978), because it implied that the $151,000 seized from Dreek's traffic stop was associated with Target Location 7 which was not true based upon an earlier affidavit submitted by Agent Tice which specified that the money was picked up from the residence of Quinesha Marshall ("Marshall"), Negron's girlfriend.  Mot. to Suppress at 4-6.  Negron contended this was a material omission entitling him to a Franks hearing.  Id. at 6-7.

The Magistrate Judge found that the search warrant affidavit did not imply that the $151,000 seized from the Dreek traffic stop came from Negron's residence because it stated that "agents observed [Negron's] girlfriend come out of *her* house" with the black box given to Dreek and later recovered from the traffic stop; moreover, the reasons given by Agent Tice to believe that Target Location 7 was Negron's residence did not include the traffic stop and seizure of the money.  R&R at 23-24 (emphasis added).  The Magistrate Judge further stated:

> The mere omission of the street address of Marshall's house, in this context, where "her house" clearly is distinct from Negron's residence at 2679 Dayview Lane that was the subject of the search warrant, does not support an inference of intentional or reckless conduct on the part of the agent to mislead the issuing Magistrate Judge. Moreover, even if the omission were found to be intentional or reckless, Negron "fails to show the inclusion of such information in the affidavit would prevent a probable cause finding."

Id. at 24 (citation omitted). In addition, the Magistrate Judge noted that there were no assertions in the affidavit that Negron was conducting narcotics transactions from Target Location 7 and, further, that Agent Tice believed evidence of Negron's drug trafficking and PGF membership would be located at the residence based upon "searches of iCloud accounts associated with Negron's cellphones and intercepted phone calls." Id. at 25. Because the affidavit provided "ample probable cause" to support the issuance of a search warrant, even if it was revised to include the omitted information, the Magistrate Judge found Negron was not entitled to a Franks hearing. Id. at 26.

### B.    Negron's Objections

#### 1.    Whether the Magistrate Judge erred in failing to conclude that Agent Tice's affidavit "intentionally and recklessly omitted a material fact"

Negron objects to the Magistrate Judge failing to conclude that the totality of Agent Tice's affidavit implies a connection between the black box taken by Marshall, Negron's girlfriend, and Target Location 7, which was believed to be

10

Negron's residence. Def.'s Objs. at 2. Negron contends that this was a deliberate

action by Agent Tice to conflate the two residences for purposes of the search of

Negron's residence because Agent Tice in other affidavits was clearer in

distinguishing Marshall's residence from Negron's house. Id. at 3-5. The

Government responds by asserting that the fact that Agent Tice chose to identify

Marshall's residence through her name or by address in other affidavits does not

demonstrate an intent to mislead or deceive the Magistrate Judge who signed the

warrant; moreover, Agent Tice distinguished Target Location 7 from Marshall's

residence in the search warrant affidavit and no further "clarification" was

necessary. Gov't's Resp. at 7-10.

> The Fourth Amendment requires a hearing to be had at the defendant's request "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." Franks, 438 U.S. at 155–56. "Omissions made negligently or because of an innocent mistake are insufficient to warrant suppression of the evidence." United States v. Whyte, 928 F.3d 1317, 1333 (11th Cir. 2019). Furthermore, even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause. United States v. Kapordelis, 569 F.3d 1291, 1309 (11th Cir. 2009). The defendant bears the burden of showing that the omissions would defeat a probable cause determination. Franks, 438 U.S. at 171. The defendant's attack "must be more than conclusory." Id. The district court, when making a probable cause finding, considers the totality of the circumstances to determine whether "there is a fair probability that contraband or

evidence of a crime will be found in a particular place." Illinois v.
Gates, 462 U.S. 213, 238 (1983).

United States v. Weathers, 815 F. App'x 414, 419 (11th Cir. 2020) (parallel
citations omitted).

After reviewing the entirety of the search warrant affidavit, this Court

concludes that Agent Tice did not knowingly and intentionally or with reckless

disregard for the truth conflate Marshall's residence with Target Location 7. First,

there is no language in the affidavit quoted by Negron which states or implies that

the $151,000 seized from Dreek's traffic stop came from Negron's residence; in

fact, the affidavit is clear that agents observed Marshall "come out of her house"

carrying the black box that she gave to Dreek. Second, the reasons Agent Tice

provided in his affidavit to indicate that Target Location 7 was Negron's residence

did not reference in any way that money found in the black box during the Dreek

traffic stop. Third, the inclusion of a more detailed statement by Agent Tice

distinguishing between Marshall's and Negron's residence would have had no

impact on the finding of probable cause to search Target Location 7. Finally, the

fact that Agent Tice opted to identify Marshall's residence with more specificity in

other affidavits does not show that the failure to do so in the affidavit for the search

of Target Location 7 was an "omission . . . made with the purpose of misleading

the judge issuing the warrant." Whyte, 928 F.3d at 1334.

12

Therefore, the Magistrate Judge did not err by concluding that Agent Tice's

affidavit did not "intentionally and recklessly omitted a material fact," and

Negron's objection is **OVERRULED**.

> **2.     Whether the Magistrate Judge erred in failing to conclude
> that there would have been no probable cause to support
> the search of Target Location 7 if the "omitted information"
> had been included in Agent Tice's affidavit**

Negron objects to the Magistrate Judge's conclusion that even if Agent Tice

had included additional information in the affidavit to distinguish Marshall's and

Negron's residence there still would have been probable cause to support the

search of Target Location 7. Def.'s Objs. at 6-8. Negron also asserts that Agent

Tice failed to present any facts to show that there was a connection between

Negron's residence and any criminal activity. Id. In its response, the Government

argues that even if Marshall's specific address had been inserted in the affidavit,

there still would have been probable cause to search Negron's residence;

moreover, the Government points to a number of facts to establish a connection

between Target Location 7 and Negron's criminal activity. Gov't's Resp. at 11-14.

The Fourth Amendment provides the right to be free of unreasonable

searches and seizures, and mandates "no Warrants shall issue, but upon probable

cause, supported by Oath or affirmation." U.S. CONST. amend. IV. Probable cause

13

to support a search warrant exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238.

> The task of the issuing [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the [judge] had a "substantial basis for . . . conclud[ing]" that probable cause existed.

Id. at 238-39 (alteration in original). Probable cause "is a fluid concept—turning on the assessment of probabilities in particular factual contexts[.]" United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999). Suppression is only warranted if the affidavit supporting the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Brown v. Illinois, 422 U.S. 590, 610-11 (1975).

The task of a reviewing court in examining a challenge to a search warrant is different from the task of the issuing judge. In analyzing whether a search warrant is supported by probable cause, a reviewing court does not conduct a *de novo* determination of probable cause, but only looks at whether there is substantial evidence in the record supporting the judge's decision to issue the warrant. Massachusetts v. Upton, 466 U.S. 727, 728 (1984); see also United States v. Miller, 24 F.3d 1357, 1363 (11th Cir. 1994) ("[R]eviewing courts lend substantial

14

deference to an issuing magistrate's probable cause determinations."). When deciding whether a search warrant was supported by probable cause, the reviewing court must consider only that information brought to the attention of the issuing judge. United States v. Lockett, 674 F.2d 843, 845 (11th Cir.1982). In reviewing the probable cause determination, supporting affidavits should not be interpreted in a hyper technical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to issuing judges in their probable cause determinations. See Gates, 462 U.S. at 236-37 (citing United States v. Ventresca, 380 U.S. 102 (1965)). When it is difficult to determine whether a search warrant affidavit supports probable cause, "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." Upton, 466 U.S. at 734 (quoting Ventresca, 380 U.S. at 109). Search warrants, once issued, are presumed to be validly issued. Franks, 438 U.S. at 171. The magistrate judge may also rely upon the opinions and conclusions of an experienced law enforcement officer-affiant. United States v. Robinson, 62 F.3d 1325, 1331 n.9 (11th Cir. 1995). The burden of establishing that the warrant was defective or executed improperly is upon the defendant. See id. at 1331.

15

Finally, where a warrant to search a residence is sought, the affidavit must supply the authorizing magistrate judge with a reasonable basis for concluding the defendant might keep evidence of his crimes at his home, i.e., a "safe yet accessible place." Kapordelis, 569 F.3d at 1310 (citation omitted).

> The justification for allowing a search of a person's residence when that person is suspected of criminal activity is the common-sense realization that one tends to conceal fruits and instrumentalities of a crime in a place to which easy access may be had and in which privacy is nevertheless maintained. In normal situations, few places are more convenient than one's residence for use in planning criminal activities and hiding fruits of a crime.

Id. at 1310 (citation omitted). In addition, "[t]here need not be an allegation that the illegal activity occurred at the location to be searched, for example the home, but 'the affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity.'" Id. (quoting United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002)).

This Court agrees with the Magistrate Judge that the search warrant for Target Location 7, identified as Negron's residence, was supported by probable cause based upon the information contained in Agent Tice's affidavit. The affidavit clearly established that Negron was engaged in drug trafficking and that Target Location 7 was used by Negron as his residence (indeed, Negron already

16

had been charged in a criminal indictment with conspiring to possess with the

intent to distribute controlled substances). Based on searches of iCloud accounts

associated with Negron's cell phones and other intercepted calls as cited on p. 8,

*supra*, the information obtained by Agent Tice supported a reasonable belief that

evidence of Negron's drug trafficking would be located at Target Location 7.

Agent Tice also has extensive experience in investigating drug traffickers and

attested that the residence was a likely hiding place for contraband and evidence of

Negron's criminal activities. SW Aff. ¶ 10(g); see United States v. Jenkins, 901

F.2d 1075, 1080-81 (11th Cir. 1990) (holding that the affidavit was supported by

probable cause because of the combination of the defendant's theft, the fact that

the contraband was capable of being hidden in the home, and the statement of an

experienced FBI agent that individuals who steal money often hide it in their

homes); see also United States v. Acosta, 807 F. Supp. 2d 1154, 1217 (N.D. Ga.

2011) ("For the vast majority of drug dealers, the most convenient location to

secure items is the home. After all, drug dealers don't tend to work out of office

buildings. And no training is required to reach this commonsense conclusion.")

(quoting United States v. Spencer, 530 F.3d 1003, 1007-08 (D.C. Cir. 2008)). In

addition, as discussed in the previous section, none of this proffered evidence

relied on the $151,000 seized from Dreek during the traffic stop, so the failure to

17

provide Marshall's address was not a material omission that compromised the probable cause finding.

Consequently, Negron's objection that the search warrant affidavit would have lacked probable cause if the omitted information would have been included is **OVERRULED**.

### 3. Whether the Magistrate Judge erred by failing to conduct a Franks hearing

When a "magistrate judge undertook the evaluation prescribed by Franks and considered the affidavit with the omissions and additions proposed by [the d]efendant," the trial court does not err in declining to hold a Franks hearing. Kapordelis, 569 F.3d at 1309-10. This Court agrees that the omission of Marshall's residence address was not so material to the probable cause determination that there is a presumption that the failure to include it in the warrant application was intentional or reckless. Moreover, even if the factual omission in the affidavit supporting the search of Negron's residence was knowing and intentional or in reckless disregard of the truth, its inclusion would not have prevented a finding of probable cause. Consequently, Negron failed to make a substantial preliminary showing to require a Franks hearing, and his objection to the Magistrate Judge's recommendation is **OVERRULED**.

18

## IV.    CONCLUSION

Accordingly, after a *de novo* review of those portions of the R&R to which Negron objects, the Court **OVERRULES** his objections [Doc. 765]. Finding no clear error in the remaining portions of the R&R, the Court **ADOPTS** the R&R [Doc. 741] as the Opinion and Order of the Court.

It is hereby **ORDERED** that Negron's Motion to Suppress Evidence From Search of Residence [Doc. 398] is **DENIED**, and Negron's Perfected Motion to Suppress to Address Standing for Doc. 381 [Doc. 417] is **DENIED AS MOOT**.

It is further **ORDERED** that the time between the date the Magistrate Judge certified this case ready for trial on February 6, 2025, and the issuance of this Order, shall be excluded in calculating the date on which the trial of this case must commence under the Speedy Trial Act because the Court finds that the delay is for good cause, and the interests of justice in considering Defendant's objections to the Report and Recommendation ruling on his pretrial motions to suppress outweigh the right of the public and the right of the Defendant to a speedy trial, pursuant to 18 U.S.C. § 3161(h)(1)(D).

**IT IS SO ORDERED** this 2nd day of May, 2025.

_____
MARK H. COHEN
United States District Judge

19